Argued and submitted November 2, 1994, decision of the Court of Appeals reversed and case remanded to the Court of Appeals March 30, 1995

Mark William OSOSKE,
*Petitioner on Review,*

*v.*

DRIVER AND MOTOR VEHICLE SERVICES,
*Respondent on Review.*

(DMV 38586; CA A83576; SC S41329)

891 P2d 633

Hafez Daraee, Portland, argued the cause for petitioner on review. Frederick T. Smith, Portland, filed the petition.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GRABER, J.

Durham, J., filed a concurring opinion in which Unis, J., joined.

**GRABER, J.**

The issue in this case is whether the Court of Appeals erred in dismissing, *sua sponte*, the petition for judicial review on the ground that it was filed too late. We conclude that the Court of Appeals did err, and we reverse.

Petitioner sought judicial review in the Court of Appeals of a final order of the Driver and Motor Vehicle Services Branch of the Department of Transportation (DMV). That order suspended petitioner's driving privileges. On the last page of the order, below the hearings officer's signature, were the words "ISSUANCE AND MAILING DATE," followed by a blank line. Handwritten on that line was the date "November 10, 1993."

Petitioner filed a pre-printed form "Petition for Judicial Review" of that order on April 1, 1994. In the following excerpt from his petition, the underscored material was handwritten on blank lines:

"Petitioner seeks judicial review of the final order of the DMV in case number 038586, dated 11/10/93 received on 2/4/94."

Attached to the petition were photocopies of the final order and a pre-printed envelope with a return address that said, in part: "Oregon Department of Transportation, DMV Services." The envelope bears a postmark of February 4, 1994. It is a window envelope, on which the recipient's address is not visible.

On April 15, 1994, the Court of Appeals, *sua sponte*, dismissed the judicial review. The order of dismissal read:

"Petitioner has petitioned for judicial review of an order of the Motor Vehicles Division dated November 10, 1993. The petition was filed April 1, 1994, more than 60 days after the date of the order for which review is sought. The petition was required to be filed within 60 days after the date of the final order. ORS 183.482(1).

"Judicial review dismissed."

Petitioner sought review of that order of dismissal. We allowed review to address the procedural issues involved.

The right to obtain appellate review is statutory and subject to limitations imposed by the statute conferring the

right. *Logsdon v. State and Dell*, 234 Or 66, 70, 380 P2d 111 (1963). Here, the right to appellate review is governed by ORS 183.480 and 183.482.

ORS 183.480 provides in part:

"(1)   Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order * * *.

"(2)   Judicial review of final orders of agencies shall be solely as provided by ORS 183.482, 183.484, 183.490 and 183.500."

ORS 183.482(1) provides in part:

"Jurisdiction for judicial review of contested cases is conferred upon the Court of Appeals. Proceedings for review shall be instituted by filing a petition in the Court of Appeals. *The petition shall be filed within 60 days only following the date the order upon which the petition is based is served* unless otherwise provided by statute. * * * *Date of service shall be the date on which the agency delivered or mailed its order in accordance with ORS 183.470.*" (Emphasis added.)

ORS 183.470(3) also is relevant. It provides that, in a contested case,

"The agency shall notify the parties to a proceeding of a final order by delivering or mailing a copy of the order and any accompanying findings and conclusions to each party * * *."

█      Thus, the filing of a petition for judicial review within 60 days of the date on which a final order in a contested case is "served" vests jurisdiction to conduct judicial review in the Court of Appeals. ORS 183.482(1). An agency may serve the final order by mail. ORS 183.482(1), 183.470(3). For the purpose of ORS 183.482(1), then, the date on which a final order is deposited in the mail is the date of service and, therefore, the date from which the statute measures the 60-day limit to file a petition for judicial review with the Court of Appeals.

The Court of Appeals was wrong as a matter of law when it measured the 60-day period from "the date of the final order," rather than from the date on which the final order was deposited in the mail (or otherwise served). It is the

date of service, not the date of the final order itself, that controls.

The Court of Appeals was correct, however, that the untimely filing of a petition for judicial review of a final order of DMV is a jurisdictional defect. *See* ORS 183.482(1) (establishing requirements to confer jurisdiction on Court of Appeals); *1000 Friends of Oregon v. LCDC (Clatsop Co.)*, 301 Or 622, 625-26, 632, 724 P2d 805 (1986) (concluding that estoppel cannot confer jurisdiction when filing of petition for judicial review is untimely under ORS 183.482(1)). Conversely, the timely filing of a petition for judicial review of a final order of DMV requires the Court of Appeals to exercise its jurisdiction. ORS 183.480(1); ORS 183.482(1). Therefore, we next consider the timeliness of the petition for review in this case, in relation to the date of service.

Petitioner asserts that the final order was not "served" until February 4, 1994, the date on which the envelope was postmarked. If petitioner is correct, the filing date of the petition for judicial review in the Court of Appeals (April 1, 1994) was within 60 days of the date of service of the final order, making the petition timely and its dismissal erroneous. DMV argues that the dismissal was proper.

■ DMV asserts, first, that the dismissal in this case was required, because "[t]he challenged [DMV] order expressly noted that it was issued and *mailed* to petitioner on November 10, 1993," which is more than 60 days before April 1, 1994. (Emphasis in original.) That is tantamount to saying that the final order creates an irrebuttable presumption as to its date of mailing. Nothing in the relevant statutes creates such an irrebuttable presumption, however. To the contrary, ORS 183.482(1) measures the 60-day period from the date of *service*, which is described as an action in accordance with ORS 183.470. In other words, the statute makes the *actual* date of mailing the relevant date, without express limitation on the means of determining that date. We reject the argument that the mailing date stated on the final order creates a presumption that cannot be contradicted. To hold otherwise would frustrate the purpose of ORS 183.482(1), which is to give petitioners 60 days within which to seek judicial review, by utterly foreclosing review in any case in which an agency delays mailing its final order for more than 60 days or

mistakenly states the date of mailing as more than 60 days before the actual date of mailing.

DMV also argues that the petition for judicial review filed here demonstrates its untimeliness without question, even if the mailing date stated in the final order is not conclusive. Again, we disagree.

■       We hold that the following rule applies in cases like the present one: When the Court of Appeals receives a notice of appeal or a petition for judicial review filed in that court, it must look at the face of the notice or petition to determine whether it has jurisdiction. In doing so, it must consider any attachments to the notice or petition. With respect to facts bearing on the jurisdiction of the Court of Appeals, that court must give the party filing the notice or petition the benefit of all favorable inferences that may be drawn from the notice or petition, including inferences that may be drawn from any attachments thereto. Dismissal *sua sponte* on jurisdictional grounds is appropriate only when, after the foregoing examination, there remains no question that the Court of Appeals lacks jurisdiction.[1]

We next apply that rule to the present case. Neither this court nor the Court of Appeals has any way to know for sure when the final order in this case was deposited in the mail, that is, when the applicable 60-day period began to run. The petition for judicial review and its attachment permit conflicting, reasonable inferences on that point.

The notice on the final order states on its face that the final order was "mailed" on November 10, 1993. On the

---

[1] Although not controlling, *Ensley v. Fitzwater*, 293 Or 158, 645 P2d 1062 (1982), points the way toward the rule that we announce here. In *Ensley*, this court addressed whether the Court of Appeals had jurisdiction, when the notice of appeal stated that appeal was taken from a nonappealable order, but also referred to an appealable judgment, and that judgment was among the documents attached to the notice. 293 Or at 160. This court concluded that the notice of appeal was sufficient to confer jurisdiction on the Court of Appeals:

"In this case the adverse party and an appellate court could easily determine from the face of the notice, documented by the judgment attached, that the judgment entry necessary to its jurisdiction was present and that appeal was taken from that judgment." 293 Or at 162.

In determining whether there was jurisdiction, then, the *Ensley* court looked to matters alleged in the notice of appeal and considered attachments thereto, even though the attachments contradicted and supplemented the text of the notice.

other hand, the signed petition and attachment, on their face, imply that the final order was not mailed or otherwise served on November 10, 1993, but rather on February 4, 1994.

It appears that petitioner initially wrote "11/10/93" next to the word "dated" on the pre-printed form petition for judicial review, then crossed out that date and wrote "received on 2/4/94" after the word "dated." That wording permits an inference that petitioner denied that the final order was served on "11/10/93," although that was the date stated in the order. Petitioner alleged instead that he "received" the final order on February 4, 1994, even though DMV purported to have issued and mailed it on November 10, 1993.

The allegation that petitioner "received" the final order on February 4, 1994, does not, by itself, contradict the statement by DMV that it mailed the final order on November 10, 1993. That is because the petition says "received," rather than "mailed." In addition to alleging that he "received" the final order on February 4, 1994, however, petitioner stapled to the petition an envelope, bearing DMV's pre-printed return address and a postmark of February 4, 1994. If the final order in this case were folded in thirds, it would fit into that envelope, with petitioner's name and address visible through the window. A reasonable inference to be drawn from the petition for judicial review as a whole is that the attached final order, as to which judicial review was sought, was "received" in the attached envelope. In other words, if one reads the petition for judicial review as a whole, including its attachments, one reasonably may infer that DMV served the final order by mail on February 4, 1994. If that is so, then the petition for judicial review was filed in a timely manner. February 4 is within 60 days of April 1, 1994, when petitioner filed his petition for judicial review in the Court of Appeals.

■ To summarize, the petition for judicial review permits a reader reasonably to infer that the final order was mailed *either* on November 10, 1993, *or* on February 4, 1994. In view of those conflicting inferences, the Court of Appeals erred when it dismissed petitioner's claim, *sua sponte*, without further inquiry.

For the foregoing reasons, the decision of the Court of Appeals, dismissing the petition for judicial review, is reversed. The case is remanded to the Court of Appeals for proceedings consistent with this opinion.

**DURHAM, J.,** concurring.

I concur in the majority's result, but not its reasoning.

The legal issues raised in this proceeding are controlled by ORS 183.482(1), which provides:

> "Jurisdiction for judicial review of contested cases is conferred upon the Court of Appeals. Proceedings for review shall be instituted by filing a petition in the Court of Appeals. The petition shall be filed within 60 days only following the date the order upon which the petition is based is served unless otherwise provided by statute. If a petition for rehearing has been filed, then the petition for review shall be filed within 60 days only following the date the order denying the petition for rehearing is served. If the agency does not otherwise act, a petition for rehearing or reconsideration shall be deemed denied the 60th day following the date the petition was filed, and in such cases, petition for judicial review shall be filed within 60 days only following such date. Date of service shall be the date on which the agency delivered or mailed its order in accordance with ORS 183.470."

The majority correctly concludes that the Court of Appeals erred in dismissing the petition. The dismissal order said that the petition was filed "more than 60 days after the *date of the order* for which review is sought." (Emphasis added.) However, under ORS 183.482(1), the *date of service* of the final order, not the date of the order, determines whether the petition is timely filed.

The majority proceeds to examine the petition and its attachments to determine whether the petition is untimely filed. That inquiry is appropriate because, if the petition discloses without question that it is not timely filed, the court lacks jurisdiction, and the result reached by the Court of Appeals would be affirmable for that reason. However, in conducting that inquiry, the majority announces a new rule governing *sua sponte* dismissal on jurisdictional grounds and, applying its new rule, the majority draws conflicting inferences about when the final order was served:

"The notice on the final order states on its face that the final order was 'mailed' on November 10, 1993. On the other hand, the signed petition and attachment, on their face, imply that the final order was not mailed or otherwise served on November 10, 1993, but rather on February 4, 1994." 320 Or at 662.

It draws the latter inference by imagining whether the final order, if folded in thirds, could fit into the envelope, a copy of the front of which accompanied the petition.

For the reasons stated below, I believe that the majority's examination of those factual questions is misguided and that its adoption of a new rule governing the determination whether appellate jurisdiction exists is unnecessary.

Only two events have occurred in this proceeding. Petitioner has filed the petition for judicial review, and the Court of Appeals has dismissed it. DMV did not file an appearance before the dismissal. On that limited record, the only "fact" that even arguably suggests that the petition is untimely filed is the recital of the words "ISSUANCE AND MAILING DATE: November 10, 1993" on the copy of the final order attached to the petition. The issue is whether those words on that document prove, or create an inference about, the actual mailing date of the final order.

The majority correctly rejects DMV's argument that those words require the court to conclude that the mailing date of the final order was November 10, 1993. However, the majority infers from those words that DMV issued and "mailed [the order] on November 10, 1993." 320 Or at 663. Drawing that inference is an error.

Petitioner was required to attach a copy of the final order to the petition for judicial review. ORAP 4.15(4) provides: "The petition shall be accompanied by a copy of the order, rule or ruling from which the appeal is taken." By attaching the final order to the petition, in compliance with that rule, petitioner does not judicially admit, or manifest an adoption of or belief in, the truth of any fact described in the order, including facts related to the date or method of service of the order. Standing alone, the recital of the date of service

on the order attached to the petition is not evidence and furnishes no basis for a court to infer that the recital is true.

The majority implies that the recital of the date of service is a factual assertion *by DMV*. 320 Or at 663. That is inaccurate. DMV did not appear before dismissal of the petition. It did not establish the truth of the recital by affidavit or other means. By yielding to the understandable tendency to take matters at face value, the majority engages in the unexplained and unwarranted assumption that the unverified recital about service by an unidentified DMV employee is true. That leap of faith sacrifices the court's strong institutional interest in basing its jurisdictional determinations on facts rather than on suppositions that may result from innocent mistake or fraud.

Because the recital of a mailing date on the copy of the final order that accompanied the petition does not prove, or support an inference about, the mailing date of the order, this case affords no occasion for the court to fashion a rule to govern cases in which the petition states conflicting facts about appellate jurisdiction. Moreover, the majority has no reason to decide whether the petition creates a competing inference that the final order was served by mail on February 4, 1994.

Even if this case required us to decide whether the petition permits a reader to infer that DMV served the final order by mail on February 4, 1994, I would not accept the majority's analysis of that issue. The majority draws that inference by linking petitioner's statement that he "received" the order on February 4, 1994, with the copy of an envelope, bearing a February 4, 1994, postmark, that accompanied the petition. I reject that inference, because it rests on speculation.

The petition does not say that the envelope contained the DMV order. Petitioner does not identify the envelope that accompanied the petition. In fact, petitioner fails to say *anything* about the envelope. Aside from guessing, the court has no means to determine the significance of the copy of the envelope and what role, if any, the envelope played in DMV's service of the order.

This court, in other cases, has examined documents attached to appeal notices to determine whether the court has jurisdiction but has inferred the existence of a jurisdictional fact from such an attachment only if the fact was easily determined from the text of the petition or attachment. For example, in *Ensley v. Fitzwater*, 293 Or 158, 645 P2d 1062 (1982), the court held that it had jurisdiction over an appeal where the notice of appeal described a nonappealable order but also expressly referred to an attached copy of the appealable judgment. The court said:

"In this case the adverse party and an appellate court could easily determine from the face of the notice, documented by the judgment attached, that the judgment entry necessary to its jurisdiction was present and that the appeal was taken from that judgment." 293 Or at 162.

In *Zacker v. North Tillamook County Hospital Dist.*, 312 Or 330, 336, 822 P2d 1143 (1991), this court examined the face of the notice of appeal to determine whether it referred to an appealable judgment. It referred only to a nonappealable "order" of dismissal, which was attached. Even though the trial court had entered the necessary appealable judgment of dismissal on the same day that the dismissal order was filed, the court held that the notice of appeal was defective, because it made no reference to a judgment. When read together, *Ensley* and *Zacker* stand for the proposition that, in order to satisfy the jurisdictional prerequisite to refer to the judgment appealed from in the contents of the notice of appeal, an appellant must describe the judgment in the text of the notice of appeal, or attach a copy of the judgment and refer to it in the text of the notice, so that the court easily can determine the trial court action that is appealed.

*Ensley* and *Zacker* concerned the determination of the existence of a fact necessary to appellate jurisdiction — an appealable judgment. The majority explores a somewhat different issue — the timeliness of the petition. However, the methodology used in those cases, to examine attachments to an appeal notice for jurisdictionally significant facts, is directly relevant. Accordingly, I would follow *Ensley* and *Zacker* by examining the text of the petition and all attachments to determine whether a defect in appellate jurisdiction exists. I would draw no inference from the envelope attached

to the petition, because nothing in the petition or attachments clearly explains or demonstrates the relevance of the envelope. Unless the jurisdictional fact to be inferred is reasonably obvious from the face of the petition and any attachments, *Ensley* and *Zacker* do not permit the sort of judicial speculation about appellate jurisdiction that the majority engages in here.

Because petitioner never explained the relevance of the envelope, I do not join in the majority's attempt to divine whether the final order, if folded in thirds, would fit into this or any other envelope. I also see no reason to examine at length the logic of the majority's assumption that the DMV order, which petitioner says he *received* on February 4, 1994, was *mailed* to him by DMV in an envelope postmarked on that same day. 320 Or at 663. The majority may believe that that sort of mail service exists, but I do not.

At this stage, the record does not establish, without question, when the final order was served. Accordingly, the *sua sponte* dismissal was an error, and the order of dismissal must be reversed.

For the reasons stated, I concur in the majority's result.

Unis, J., joins in this concurring opinion.